```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION

FIRESTONE COMMUNICATIONS, INC.   §
                                 §
VS.                              §   CIVIL NO. 4:05-CV-766-Y
                                 §
Q TELEVISION NETWORK INC.,       §
ET AL.                           §
```

### ORDER OVERRULING IN PART AND SUSTAINING IN PART OBJECTIONS AND DENYING APPROVAL OF FINAL REPORT

On June 6, 2009, this Court conducted a hearing on whether there remains a need for a receiver in this case. At the hearing the receiver explained that the remaining assets of defendant Q Television Network, Inc. ("QTN"), are valueless, and that potential causes of action against QTN's former directors and officers are not worth pursuing.

The receiver then filed his Final Report and Accounting of Assets and Request to Make Cash Distributions (doc. #60). The report requests that the receiver be allowed to quitclaim the rights to the film "Shortbus" to plaintiff Firestone Communications, Inc. ("Firestone"), and to distribute the funds held by the receiver to all of QTN's creditors pro rata. Initially, the schedule of creditors filed with the final report did not include Firestone, but, after Firestone filed its objections to the report, the receiver amended the schedule to include Firestone.

Firestone objected to other aspects of the report beyond this omission.  According to Firestone, it should receive all of QTN's monetary assets that exceed the amount owed to the receiver and his counsel.  Additionally, Firestone complains that the schedule of creditors is unreliable, in that it lists unknown entities, does not provide sufficient information from which to determine whether the listed claims are valid, and contains ambiguous notations.  For example, "PD" appears next to the name of some creditors, perhaps indicating that these creditors have already been paid.  Finally, Firestone complains that the transfer of the rights to Shortbus should be to itself and its assigns.

Firestone's objections have now been fully briefed.  The receiver, in apparent agreement with Firestone regarding the disposition of the rights to Shortbus, now seeks to transfer the rights to the film to Firestone and its assigns by quitclaim. The receiver responds to Firestone's complaint regarding the reliability of the schedule of creditors by explaining that the schedule of creditors and claims is based on information provided by QTN's former financial officer.  Further, the receiver states that he has never represented that Firestone would receive the balance of QTN's monetary assets.

Out of concern that Firestone's requests would improperly deprive QTN's other creditors of their interests in QTN's assets,

the Court ordered Firestone to submit an additional reply brief addressing specific issues.  This supplemental brief is now before the Court.  After review of this brief, and a review of the briefing on the final report generally, the Court SUSTAINS Firestone's objection to the schedule of creditors, but OVERRULES the objection to the receiver's request to distribute QTN's assets to its creditors on a pro-rata basis.

The order for the additional reply brief required Firestone to address "[a]ny deficiencies in the schedule of creditors provided by the receiver.  Specifically, Firestone must address why information provided by QTN's former financial officer is not a sufficient basis for the schedule and what alternative sources of information are available to further develop the schedule." Firestone was also ordered to address, in its supplemental response, "[t]he legal authority by which this Court could order that all of QTN's monetary assets that remain after the receiver has been paid be transferred to Firestone, without regard to QTN's other creditors."  But Firestone does not point to any alternative sources of information in its supplemental brief. Nor does Firestone discuss any specific legal authority for the Court to approve a distribution of QTN's assets that excludes its other creditors.  Instead, Firestone asserts that the Court should rely on the method for handling third-party claims set out in the order appointing the receiver.

3

In that order, the Court stated "in those instances in which Receivership Assets serve as collateral to secured creditors, the receiver may surrender such assets to secured creditors, and shall have the authority to make such surrender conditional upon the waiver of any deficiency of collateral." (Doc. #37, p.14, ¶7.) The order further provides that "to the extent any creditors or claimants seek to prosecute an action or proceeding against QTN, or to satisfy a judgment or claim from Receivership Assets, they will do so only with the prior permission of this Court or the United States Bankruptcy Court in the event the receiver recommends and the Court approves the commencement of such a proceeding." (*Id.* at p.15, ¶9.) According to Firestone, because no other creditor has submitted its claim to the Court, it is the only creditor entitled to payment from receivership assets.

But the language from the order appointing the receiver does not resolve the issues raised by the Court in the order for supplemental briefing. Regardless of any language in a previous order by this Court, before any failure by QTN's other creditors to file a claim in this Court may have the effect of depriving them of their interest in QTN's assets, such creditors must have received proper notice of the possibility that they would be deprived of their rights. As a general matter, due process requires "notice reasonably calculated, under all the

circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983) (quoting *Mullane v. C. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  There is nothing in the record that indicates QTN's creditors have been given notice of these proceedings.  Thus, contrary to Firestone's contentions, the Court cannot order that QTN's monetary assets or the rights to Shortbus be transferred to Firestone exclusively.

Courts that have addressed the rights of non-party creditors in relation to property held by a receiver appointed under Rule 66 to aid in the enforcement of a judgment have concluded that the creditors' rights were fixed prior to the receivership, and that the receiver holds the property "just as the debtor held it," subject to any claims that could have previously been made against the debtor.  *Powell v. Maryland Trust Co.*, 125 F.2d 260, 272 (4th Cir. 1942); *see also Modart v. Penrose Indus. Corp.*, 293 F. Supp. 1116, 1119 (E.D. Pa. 1967) ("[T]he rights of creditors to the property in possession of the receiver are fixed as of the moment of his appointment . . . [and creditors'] claims continue their status as of the appointment date.") (citing *Mercantile Trust Co. v. Southern States Land & Timber Co.*, 86 F. 711 (5th Cir. 1898).  Hence, a receivership such as the one in this case merely puts creditors to a choice--proceed against the debtor in

5

a separate case or file their claims against the receivership assets and take a share of the debtor's property upon distribution by the receiver. *See id.* at 1120. But, again, the creditors are only put to this choice after receiving proper notice.

Firestone has identified no better starting point for identifying QTN's other creditors than QTN's accounting records. Yet even the receiver's attorney, during the hearing conducted to determine whether the receivership in this case should be terminated, acknowledged that the records are poor, incomplete, and not particularly helpful. Consequently, as argued by Firestone, it is necessary to further verify both the identity of QTN's creditors and the amounts owed to them before any distribution is made by the receiver.

There appears to be no precedent addressing what amounts to sufficient notice in the context of a receivership pursuant to Rule 66. Looking to law in the analogous context of a forfeiture proceeding, and given the need to further verify the identity of QTN's creditors and the amounts they are owed, the Court concludes that notice should be given both directly to known creditors and by publication for potential unknown creditors. Under the procedures for both criminal and civil forfeitures, the government, as the party seeking to obtain property by forfeiture and, concomitantly, cut off the rights of third-party claimants,

6

is to provide direct notice to any known party who has or potentially has a claim against the property at issue.  *See* 21 U.S.C. § 853(n)(1); 19 U.S.C. § 1607(a); F~ED~. R. C~IV~. P. S~UPP~. R. G(4)(b)(I); *Dusenbery v. United States*, 534 U.S. 161, 168 (2002). This is in keeping with the due-process mandate that "[w]hen the names and addresses of those with legally protected interests are reasonably ascertainable" notice must be provided directly to such persons. *Mennonite Bd. of Missions*, 462 U.S. at 795.  For unknown claimants, notice may be provided through publication. *See* 21 U.S.C. § 853(n)(1); 19 U.S.C. § 1607(a); F~ED~. R. C~IV~. P. S~UPP~. R. G(4)(a); *see also Mullane*, 339 U.S. at 314 (holding that due process does not require proof of actual notice in all cases, but instead requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action").

   Accordingly, the Court ORDERS the receiver to provide notice of these proceedings to QTN's creditors.  The receiver must first attempt to serve a copy of this order by certified mail, return receipt requested, on all creditors whose address is known.  The receiver must then file a notice with the Court listing all creditors that have verified their receipt of notice by their return receipt.  The receiver must complete the attempt at service by mail no later than September 28, 2009, and must file the notice with the Court no later than October 19.

With regard to creditors who are served with a copy of this notice, the Court states the following:

> A receiver has been appointed to conserve the assets of Q Television Network, Inc., in proceedings now pending before the United States District Court for the Northern District of Texas, Fort Worth Division, cause number 4:05-CV-766-Y. A judgment has been entered against Q Television Network, Inc., in those proceedings, and the receiver will soon distribute the company's assets in satisfaction of the judgment. Any party with a claim against Q Television Network, Inc., or its assets must file such claim with the United States District Court for the Northern District of Texas, Fort Worth Division, no later than December 16, 2009.

For all known creditors that the receiver was not able to serve via certified mail, as well as for any unknown creditors, the receiver must provide notice through publication. The receiver must publish notice of these proceedings in the *Fort Worth Business Press* once a week for three consecutive weeks. The notice must contain the indented language above. After that language, the notice must also state that "This notice is directed to any and all parties with an interest in Q Television Network, Inc.'s assets, including, but not limited to:" The notice should then go on to list the name and last known address of any known creditor that the receiver could not serve via certified mail. The receiver must begin notice by publication no later than October 26.

Once the time for the filing of claims has passed, the receiver must file an updated schedule of creditors, consisting

8

solely of those creditors that have responded and asserted a claim against receivership assets.  The Court will then enter an order distributing QTN's assets to these creditors on a pro-rata basis.

    SIGNED: September 14, 2009.

                                          TERRY R. MEANS
                                          UNITED STATES DISTRICT JUDGE

TRM/jar